CITY OF HUDSON and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*October 16—November 10, 1942.*

478

For the appellants there was a brief by *Varnum & Peterson* of Hudson, and *Faegre & Benson, Paul J. McGough,* and *Donald L. Robertson,* all of Minneapolis, Minnesota, and oral argument by *Mr. McGough.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Irving Paap there was a brief by *Sanborn, Blake & Aberg* of Madison, and *William C. Green* and *Robert J. Tyrrell,* both of St. Paul, Minnesota, and oral argument by *W. J. P. Aberg.*

ROSENBERRY, C. J.    Two questions are presented for decision: (1) Was W. T. Davis a contractor under respondent, city of Hudson, at the time of the accident?   (2) Was A. F. Peavey an employer of Paap at the time of the accident and also liable for payment of compensation to Paap?

1. Sec. 102.06, Stats. 1939, provided:

"An employer shall be liable for compensation to an employee of a contractor or subcontractor under him who is not subject to this chapter, or who has not complied with the conditions of subsection (2) of section 102.28 in any case where such employer would have been liable for compensation if such employee had been working directly for him. . . ."

This part of the statute was given careful consideration in *Madison Entertainment Corp. v. Industrial Comm.* (1933)

211 Wis. 459, 248 N. W. 415, and the conclusion there arrived at was affirmed in *Wells Coal & Dock Co. v. Industrial Comm.* (1937) 224 Wis. 546, 272 N. W. 480. As pointed out in these cases the word "contractor," as used in these sections of the statutes, must be given a restricted meaning; that it was intended to and does apply only to those situations where a principal enters into a contract to have some part of the work ordinarily and customarily done by him done by a contractor. An intolerable situation would be created if the section were to include the employees of every person or corporation employed to do a piece of specialized work not ordinarily and customarily done by the employer. If the statutes were so construed one could never know who his employees were and therefore he could not protect himself by compensation insurance. The question we have here therefore is, Were the operations to be performed by Davis pursuant to his contract, in the performance of which he called to his assistance Peavey, work ordinarily and customarily done by the city of Hudson?

On behalf of the respondents it is argued that the application of this test is dependent upon findings of fact; that the commission found—

"That tollkeepers are regularly employed by the city and from time to time city employees have done maintenance and repair work on the bridge; that during the time the work at which applicant was employed was being performed, the city had a crew of its own men at work constructing and repairing concrete abutments to the bridge"— .

which finding is conclusive upon the court. It is to be noted that neither the examiner nor the commission made a finding with respect to whether the work being done by Davis and Peavey was a part of the work ordinarily and customarily performed by the city of Hudson. If the finding had been made there is no evidence which would support it. The commission seemed to be of the view that because the bridge was

operated at a profit, and the city maintained a crew to make some repairs, that that was decisive of the question of the city's liability. The fact that the city, at the time that Davis and Peavey were performing their work upon the bridge, was engaged in carrying on its customary and usual operations is not decisive of the question.

It is not claimed that the city of Hudson was equipped with rivet guns, acetylene torches, compressors, sandblasting equipment, or welding machines, which equipment was necessary to the performance of the contract, or that it had in its employ riveters, welders, compressor operators, or welders' helpers. Certainly work of the kind performed by Davis and Peavey was not work ordinarily and customarily performed by the city of Hudson in the course of operating and maintaining the bridge. No doubt the *Wells Coal & Dock Co. Case, supra,* made repairs to some parts of its equipment, but it was not equipped to repair a boiler nor did it customarily repair boilers. The repair of a boiler was a specialized piece of work which could be done only by those who were skilled in that work. The city might have rented rivet guns and other equipment and might have employed riveters, welders, and others specially trained for work of the kind being done by Davis and Peavey but it did not do so. It contracted with Davis for the performance of the work for which it was not equipped and did not ordinarily and customarily perform. While it had an inspector upon the job, his duty was merely to see that the work was done in a proper and workmanlike manner in accordance with the contract. See *Employers Mut. L. Ins. Co. v. Industrial Comm.* (1937) 224 Wis. 527, 272 N. W. 481. The cleaning of the bridge by sandblasting, which was necessary, and the repair of the bridge were a part of the one operation. It is considered that there being no finding that the work being done was such as was usually and customarily done by the plaintiff as a part of the operation and maintenance of the bridge, the court is not concluded by the

finding of the commission; that upon the undisputed evidence it clearly appears that Davis and Peavey were performing a specialized piece of work not ordinarily and customarily performed by the city for itself; that neither Davis nor Peavey or Davis and Peavey were contractors *under the city of Hudson* within the meaning of the statute.

2. The commission found that Paap, who had been an employee of Davis for many years, was not an employee of Peavey. Whether or not Paap consented to become an employee of Davis and Peavey instead of Davis presented a pure question of fact, and the finding of the commission upon that question is conclusive. · Without attempting to analyze the exact relationship between Davis and Peavey with respect to the performance of the contract, it is clear that Davis could not by his agreement with Peavey, not consented to or approved by Paap, bind Paap. Paap had been an employee of Davis. He was paid by Davis or from funds furnished by Davis. He looked to Davis as his employer throughout the operation. Davis furnished him hospital treatment and gave to him certain sums of money. From all of these facts the commission might well arrive at the conclusion that there was never an intention to change the relationship which existed between Davis and Paap, which was that of employer and employee.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to enter judgment setting aside the award against the plaintiff city of Hudson. In other respects the judgment of the trial court is affirmed. Plaintiff to recover its costs against Paap.